# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

BRIANNA T. MELTON,

        Plaintiff,

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

No. C15-0055-CJW

**MEMORANDUM OPINION AND ORDER**

_____

The claimant, Brianna T. Melton (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Supplemental Security Income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Claimant contends the Administrative Law Judge (ALJ) erred in determining she was not disabled. For the reasons that follow, the court affirms the Commissioner's decision.

## I.    BACKGROUND

Claimant was born in 1988 and was 23 years old at the time of her application for SSI. AR 33, 43, 62.[1] Claimant completed high school, and was placed in behavioral

---

[1] "AR" refers to the administrative record below.

disorder classes. AR 33, 43. She has no full time work history. AR 33, 44-45. Claimant alleged her disability began on May 1, 2002. AR 22, 140.

On January 4, 2012, claimant filed an application for disability benefits. AR 140.[2] Claimant asserted she was disabled due to anxiety and depression. AR 140-45, 195.

On March 15, 2012, the Commissioner denied claimant's application (AR 85-88), and on August 21, 2012, denied her request for reconsideration (AR 90-93). On October 22, 2012, ALJ John E. Sandbothe convened a hearing at which claimant, her mother, Angela Melton, and vocational expert, Julia Svec, testified. AR 40-60. On January 12, 2014, the ALJ issued his decision finding claimant was not disabled. AR 22-34. On April 17, 2015, the Appeals Council affirmed the ALJ's finding. AR 1-6. The ALJ's decision, thus, became the final decision of the Commissioner. 20 C.F.R. § 404.981.

On June 22, 2015, claimant filed a complaint in this court. Doc. 3. On September 28, 2015, with the consent of the parties, the Honorable Chief Judge Linda R. Reade transferred this case to a United States Magistrate Judge for final disposition and entry of judgment. Doc. 10. The parties have briefed the issues, and, on December 8, 2015, this case was deemed fully submitted. Doc. 13. On February 19, 2016, this case was assigned to the undersigned United States Magistrate Judge for a ruling.

---

[2] The court recognizes that the ALJ (AR 22), and both parties (Doc. 11, at 4; Doc. 12, at 3), state that claimant filed for benefits on December 23, 2011. Claimant cites to the ALJ's finding, and to page 140 of the record. The record, at page 140, states "On January 4, 2012, you applied for Supplemental Security Income …." AR 140. At the top of each page of the application, the date January 4, 2012, appears. AR 140-145. The only reference to December 23, 2011, appears on the second page of the application in reference to a question about whether claimant has a criminal history. AR 141. The Commissioner cites to pages 61 and 140-145 of the record. Page 61 is a Disability Determination and Transmittal form which, in box 3, indicates a filing date of December 23, 2011. AR 61. Ultimately, the court finds that it is of no import for the purposes of this order, however, whether claimant filed her application on December 23, 2011, or January 4, 2012.

## II.     DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. An individual has a disability when, due to his physical or mental impairments, he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy, but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. §§ 404.1566(c)(1)-(8), 416.966(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Id.* §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707–08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. *Id.* § 404.1572(a). "Gainful" activity is work done for pay or profit, even if the claimant does not ultimately receive pay or profit. *Id.* § 404.1572(b).

3

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c), 416.921(a); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include: "(1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting." *Id*. §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of her past relevant work. If the claimant can still do her past relevant work, then she is considered not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). Past

relevant work is any work the claimant has done within the past 15 years of her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. *Id.* § 416.960(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC is based on all relevant medical and other evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004) ("The ALJ must determine a claimant's RFC based on all of the relevant evidence. This includes "an individual's own description of [her] limitations."); *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (an ALJ is required to "determine the claimant's RFC based on all relevant evidence, including medical records, observations treating physicians and others, and claimant's own descriptions of [her] limitations."). At Step Four, the claimant has the burden to prove her RFC. *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004).

Fifth, if the claimant's RFC, as determined in Step Four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do given the claimant's RFC, age, education, and work experience. *Id.* §§ 416.912(f), 416.920(a)(4)(v). The Commissioner must show not only that the claimant's RFC will allow him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the

existence of a disability. *Id.* §§ 404.1545(a)(3), 416.945(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps, the ALJ has determined the claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use was a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id.* If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability and the claimant is not disabled. 20 C.F.R. §§ 404.1535, 416.935.

### III. THE ALJ'S FINDINGS

The ALJ made the following findings:

(1) The claimant has not engaged in substantial gainful activity since December 23, 2011, the application date (20 C.F.R. §416.971 *et seq.*).

(2) The claimant has the following severe impairments: depression, anxiety, oppositional defiant disorder, and dyslexia (20 C.F.R. §416.920(c)).

(3) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).

(4) Claimant has the Residual Functional Capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to simple, routine, repetitive work, and she should have no contact with the public. The work should be performed at a regular pace.

6

(5) The claimant has no past relevant work (20 C.F.R. §416.965).

(6) The claimant was born on [XXX], 1988 and was 23 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 C.F.R. §416.963).

(7) The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §416.964).

(8) Transferability of job skills is not an issue because the claimant does not have past relevant work (20 C.F.R. §416.968).

(9) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§416.969 and 416.969(a)).

(10) The claimant has not been under disability, as defined in the Social Security Act, since December 23, 2011, the date the application was filed (20 C.F.R. §416.920(g)).

AR 24–34.

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

This court must affirm the Commissioner's decision "if the ALJ's decision is supported by substantial evidence in the record as a whole." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008)); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive … ."). "Substantial evidence" is "less than a preponderance, but enough that a reasonable mind might accept

as adequate to support a decision." *Wright*, 542 F.3d at 852 (quotation and citation omitted). The Eighth Circuit Court of Appeals has explained the standard as "something less than the weight of the evidence and allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (internal quotation omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (internal citation omitted). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th

Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "simply because some evidence may support the opposite conclusion." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). *See also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.") (internal citation omitted).

## V. DISCUSSION

Claimant argues the ALJ's residual functional capacity (RFC) assessment is flawed for three reasons:

1. The ALJ's Residual Functional Capacity assessment and hypothetical question do not precisely set forth the claimant's credible limitations. Doc. 11, at 11-13.

2. The ALJ's Residual Functional Capacity assessment is flawed because the ALJ did not fully develop the record by ordering a consultative examination regarding claimant's current functioning. Doc. 11, at 13-18.

3. The ALJ's Residual Functional Capacity assessment is flawed because the ALJ discounted claimant's subjective allegations without identifying inconsistencies in the record as a whole. Doc. 11, at 18-21.

The court will address these arguments separately below.

### A. Whether the ALJ's RFC Assessment and Hypothetical Question Adequately Reflected Claimant's Limitations

Claimant argues the ALJ's RFC assessment, and the hypothetical question he posed to the vocational expert, do not accurately reflect the opinions of a state agency consulting psychologist (the psychologist). Doc. 11, at 11. Claimant argues that the ALJ gave "great weight" to the psychologist, but "then failed to appropriately include those limitations in the ALJ's assessment of the claimant's" RFC. Doc. 11, at 12. Claimant identifies "two major differences between the psychologist's limitations and the ALJ's RFC assessment: (1) limits on claimant's interactions with others; and (2) the "environment" or "pace" at which claimant could work. *Id*. The Commissioner argues substantial evidence as a whole supports the ALJ's determination. Doc. 12, at 7-11. The Commissioner argues the ALJ gave great weight, but not controlling weight, to the psychologist's opinion;, there are no material differences between that opinion and the RFC, in any event; and, ultimately, the RFC is a decision for the Commissioner, not a psychologist. *Id*.

The psychologist opined that "claimant is able to complete simple, repetitive tasks on a sustained basis in a low stress environment that requires limited interactions." AR 76. The ALJ determined claimant is able to complete "simple, routine, repetitive work" "performed at a regular pace" and "no contact with the public." AR 26. To the extent claimant argues there is a material difference between the psychologist's opinion and the ALJ's assessment, it is not readily apparent looking at the plain language they used. Indeed, the court finds no material difference in the language.

Claimant asserts there is a difference between "limited interactions" and "no contact with the public" because "the ALJ did not limit interactions with coworkers or supervisors at all." Doc. 11, at 12. There is, however, no basis in the record to support disabling limitations with coworkers and supervisors. First, the psychologist indicated

10

that claimant's ability to "get along with coworkers or peers" was "[n]ot significantly limited." AR 75. He found her "ability to maintain socially appropriate behavior" was "[n]ot significantly limited." *Id*. Regarding interactions with supervisors, the psychologist's report indicates claimant stated she was "getting along better with authority figures than she did when she was a teen." AR 76. He found her "ability to accept instructions and respond appropriately to criticism from supervisors" was "[m]oderately limited." AR 75. There is nothing in his narrative explanation of his findings stating that claimant has limitations on her ability to interact appropriately with coworkers or supervisors that required inclusion in claimant's RFC assessment. AR 76.

The record simply does not support a finding that claimant had any limitations on her ability to interact with coworkers, so the omission of a limitation in that regard in the RFC assessment, or the hypothetical question to the vocational expert, was not erroneous. The psychologist's finding that claimant was "moderately limited" in her ability to accept instructions and criticism from supervisors did not mean that the RFC has to include a limitation in that regard. *See also Lacroix v. Barnhart*, 465 F.3d 881, 888 (8th Cir. 2006) (finding ALJ did not err in failing to include "moderate" limitations in the RFC because moderate means the individual could still function satisfactorily). For that same reason, it was not necessary for the ALJ to include these mild and moderate limitations in the hypothetical question to the vocational expert. In any event, the hypothetical adequately accounted for these limitations.

Claimant asserts the second distinction between the psychologist's and the ALJ's description of claimant's limitations is that the consultant referred to "low stress environment" while the ALJ used the term "regular pace." Doc. 11, at 12. Claimant asserts that "low stress environment" incorporates "other sources of stress in the work environment, such as the ability to accept instructions and respond appropriately to criticisms from supervisors, the ability to respond appropriately to changes in the work

setting, and the ability to set realistic goals or make plans independently of others." Doc. 11, at 12-13. Claimant does not reference anything in the psychologist's report, however, showing that this is what he meant by the term "low stress environment." Further, claimant conflates the ability to work with supervisors with stress. Claimant also does not cite to any legal authority suggesting "low stress environment" has such an expansive definition. The court was unable to find any reported cases defining "low stress environment" as inconsistent with a regular pace work environment.

In any event, the RFC must only include those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004). The psychologist's report reflects claimant's own statement that she has less trouble with authority figures than she did as a teen. AR 76. There is nothing in the record showing that claimant's history of starting, but leaving, numerous jobs had anything to do with an inability to interact appropriately with supervisors, respond to changes in the work setting, or set realistic goals and plans. Indeed, claimant testified "she could be very personable" in a work setting. AR 27. She lost jobs not due to poor interactions with others, but because she "would not show up for work." *Id*. Finally, in a 2002 assessment by Dr. Mary Eyanson, claimant denied difficulties in social functions. AR 29. The ALJ also took into account the record as a whole, not simply the consultative psychologist's opinion. AR 26-33.

Accordingly, the court finds that substantial evidence in the record as a whole supports the limitations the ALJ found for purposes of the RFC.

### B. *Whether the ALJ Erred in Not Fully Developing the Record*

Claimant argues the ALJ erred in failing to fully develop the record by ordering a consultative examination regarding claimant's current functioning. Doc. 11, at 13-18. Claimant argues the ALJ could not make an informed decision because there was limited

information about her current mental limitations. She relates that Dr. Ali Safdar, a psychiatrist who saw claimant at the Abbe Center in 2013, concluded claimant's mental disorder affected her ability to work full time, but acknowledges that Dr. Safdar did not provide any work-related limitations. Doc. 11, at 14. The Commissioner asserts that the ALJ had sufficient information in the record to determine whether claimant was disabled. Doc. 12, at 11-13.

A claimant has the burden to provide evidence establishing her functional limitations and disability. 20 C.F.R. §404.1512. *See also Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003) ("It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC."). An ALJ "is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011) (quotation and citation omitted). Thus, an ALJ may order a "consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the Commissioner] to make a determination or decision on [an applicant's] claim." 20 C.F.R. §416.919a(b). In considering an argument that the ALJ did not fully develop the record, the question for this court is whether claimant was prejudiced or treated unfairly without further development; if not, remand is unwarranted. *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993). It is claimant's burden to show she was prejudiced or treated unfairly. *Lacroix v. Barnhart*, 465 F.3d 881, 886 (8th Cir. 2006). Where, as here, a claimant is represented by counsel, the court may consider whether counsel asked the ALJ to further develop the record in determining whether claimant was treated unfairly when the ALJ did not do so. *Maes v. Astrue*, 522 F.2d 1093, 1097 (10th Cir. 2008) ("Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through

13

counsel, to rest on the record—indeed, to exhort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation.").

Claimant has not carried her burden of showing that the record needed further development. She does not identify any inconsistency that needed resolution. She does not identify any testing that was not performed. She only generally speculates that another consultative examination would be helpful. Moreover, claimant cannot show that she was prejudiced or treated unfairly. Her attorney stated he had no objection to the record (AR 42); and, when asked if there was anything further before the ALJ closed the record, claimant's attorney said "Nothing else" (AR 59). Claimant cannot, on judicial review, argue she was treated unfairly by the ALJ's alleged failure to further develop the record, when claimant did not ask the ALJ to do so when claimant had the opportunity.

In any event, a review of the record as a whole shows that it was adequate for the ALJ to make a determination regarding claimant's alleged disability without further examinations. The ALJ summarized in significant detail the testimony of claimant and her mother, claimant's school records, statements from her teachers and counselors, Dr. Safdar's evaluation, and all other records. The court cannot identify on its own any inconsistencies or deficiencies requiring further development, and claimant certainly has not done so.

Accordingly, the court finds that the ALJ did not err in allegedly failing to further develop the record.

### C. *Whether the ALJ Erred in Discounting Claimant's Subjective Allegations*

Claimant argues that the ALJ improperly discounted claimant's subjective allegations. Doc. 11, at 18-21. She argues the ALJ "should have looked deeper before jumping to th[e] conclusion" that "the claimant's condition was not as severe as alleged because she did not seek regular treatment." Doc. 11, at 19. Claimant argues the ALJ

should have considered: (1) claimant was homeless much of her adult life; (2) claimant often did not have transportation; (3) "[a]t one point, the claimant did not have a way to pay for her care at the Abbe Center"; and (4) when claimant was depressed, she "did not get out of bed except to eat to use [sic] the bathroom." *Id*. Claimant argues the ALJ improperly evaluated her daily activities and stated that claimant admitted to "certain abilities" without identifying them or citing to the record. Doc. 11, at 20. Finally, claimant argues that the ALJ "failed to identify inconsistencies in the record as a whole" and "failed to make a credibility determination as to the evidence from [claimant's] parents." *Id*. The Commissioner argues that substantial evidence supports the ALJ's conclusion that claimant's "statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible." Doc. 12, at 13.

In determining a claimant's RFC, an ALJ should consider the claimant's "own description of [her] limitations" along with medical records and opinions from medical professionals. *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (internal quotation and citation omitted). When evaluating a claimant's subjective complaints, an ALJ should examine the following so-called *Polaski* factors: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of any medications; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Buckner v Apfel*, 646 F.3d 549, 558 (8th Cir. 2011) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). In conducting the analysis, however, an ALJ need not mechanically recite each of the *Polaski* factors. *Buckner*, 646 F.3d at 558. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008) (internal quotation and citation omitted). Courts should "defer to an ALJ's credibility finding as

long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (internal quotation omitted).

The ALJ found "claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms not entirely credible." AR 32. In his decision, the ALJ identified a number of reasons for this conclusion. First, the record shows "claimant sought rather limited treatment and had significant gaps where she failed to seek any type of ongoing medical treatment." *Id*. Indeed, the record shows a gap between 2005 and 2012 where it appears claimant did not seek any treatment. AR 30-31. This was a proper factor for the ALJ to consider in assessing claimant's credibility. *See Lee v. Comm'r Soc. Sec.*, 248 Fed. App'x 458, 461 (3rd Cir. 2007) (finding ALJ could properly take into account a claimant's gap in seeking treatment in assessing the credibility of both a doctor's opinion and the claimant's subjective complaints). Second, the record also showed that claimant failed to follow through with treatment and take medication as prescribed. AR 352, 354. Again, this was a proper basis upon which the ALJ could discount claimant's credibility. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment … weighs against a claimant's credibility." (citation omitted)). Third, the ALJ noted that claimant's daily activities included preparing simple meals, doing laundry, cleaning almost every day, playing cards, playing video games, watching television, writing, "chatting" or talking with friends, shopping, getting outside almost every day, hanging out with family and friends, and caring for her four pets, which were not as limited as suggested by her subjective statements concerning the intensity of her symptoms. AR 32, 52, 211-18, 264-71. This, too, was a proper basis upon which the ALJ could discount claimant's credibility. *See Smith v. Colvin*, 756 F.3d 621, 626 (8th Cir. 2014)

(affirming ALJ's finding discounting the claimant's credibility when subjective complaints were inconsistent with daily activities).

Claimant argues, the ALJ should not have concluded the gaps in seeking treatment detracted from her credibility because "she was homeless for most of her adult life." Doc. 11, at 19. Claimant does not, however, identify the dates when she claims she was homeless. She provides citation to three places in the record, but the record citations identified by claimant does not support this hyperbole. There is nothing at AR 241 regarding claimant's residence; at AR 211, it shows claimant was living in a hotel; and the record at AR 354, regarding homelessness, references claimant's statement, but no documentation. The record actually shows that claimant regularly had housing as an adult, reflected in her addresses appearing throughout the record. *See*, *e.g.*, AR 1, 8-9, 14-15, 79, 140. It appears for a period of about six months in 2012, she was living in a hotel with her boyfriend. AR 211-12; 264-71. In any event, claimant has not demonstrated how her housing status prevented her from seeking treatment, particularly between 2005 and 2012. Similarly, although claimant asserts she lacked transportation, the record reflects she had a boyfriend and her mother gave her rides. AR 47, 211, 264. Regardless, claimant has again failed to point to anything in the record that would support the conclusion that she could not seek treatment because she lacked transportation. Claimant's statements that she spent most of her days in bed is simply inconsistent with the rest of the record. AR 32, 52, 211-18, 264-71. Finally, claimant's assertion that there was a time she could not afford medication is simply not supported by the record. Claimant cites AR 218, but that record only reflects a statement that claimant intended to apply for MHDD. Nothing else appears in the record to support a conclusion that claimant could not afford medication. The ALJ's reference to "certain abilities" (AR 33) is, indeed, vague and unsupported by a direct reference to the record. Nevertheless, the ALJ's decision, read in its entirety, shows he carefully considered

claimant's entire history, going back to childhood, her intellectual capabilities, and her medical history, which generally reflects claimant's abilities. AR 26-33.

Claimant's argument that the ALJ failed to make a credibility determination regarding evidence from claimant's parents is equally unavailing. The ALJ considered the information from claimant's parents. AR 27. Further, the ALJ noted that he could not afford significant weight to that information because claimant's mother was not medically trained, her relationship to claimant obviously shows she is not a disinterested person, and her information was inconsistent with the objective evidence. AR 28.

Accordingly, the court finds that there was a sufficient basis, adequately articulated by the ALJ, for the ALJ to find claimant's description of the intensity, persistence, and limiting effects of her symptoms not entirely credible.

## VI. CONCLUSION

The record as a whole reflects an individual who is capable of getting hired, but chooses not to show up to work. Although she apparently has some mild mental illness, substantial evidence supports the ALJ's conclusion that those limitations do not make claimant unable to work. *See Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir.2001) ("A lack of work history may indicate a lack of motivation to work rather than a lack of ability.").

Accordingly, the court **affirms** the decision of the ALJ.

**IT IS SO ORDERED** this 20th day of July, 2016.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa